UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JOSEPH BASSANI,

              Plaintiff,

        - against -

TRIOMPHE RESTAURANT CORP. d/b/a
JEAN GEORGES RESTAURANT, JEAN-GEORGES
MANAGEMENT, LLC and JEAN-GEORGES
VONGERICHTEN,

              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**07 CV 247**

ECF CASE

COMPLAINT

PLAINTIFF DEMANDS
A TRIAL BY JURY

          Plaintiff Joseph Bassani ("plaintiff" or "Bassani"), by his attorneys, Vladeck,

Waldman, Elias & Engelhard, P.C., complains of defendants Triomphe Restaurant Corp. d/b/a Jean

Georges Restaurant ("Jean Georges"), Jean-Georges Management, LLC ("Jean-Georges

Management"), and Jean-Georges Vongerichten ("Vongerichten") (collectively "defendants") as

follows:

## NATURE OF ACTION

         1.    Plaintiff brings this action to remedy defendants' failure to pay minimum

wages, as well as tip appropriation violations, in violation of the Fair Labor Standards Act, 29

U.S.C. § 201 et seq. (the "FLSA"), and the New York State Labor Law § 190 et seq. (the "Labor

Law"); to remedy discrimination on the basis of sex and sexual orientation in the terms, conditions,

and privileges of employment, in violation of the Administrative Code of the City of New York

§ 8-101 et seq. (the "City Law"); to remedy retaliation for his opposition to unlawful employment

actions, in violation of the City Law; and to remedy defendants actions in tortiously interfering with plaintiff's prospective business relations with a potential employer in violation of New York State common law.

2.      Plaintiff seeks injunctive and declaratory relief, compensatory and punitive damages, and other appropriate legal and equitable relief pursuant to the FLSA; the Labor Law; the City Law; and New York common law.

JURISDICTION AND VENUE

3.      Pursuant to § 8-502(c) of the City Law, prior to filing this Complaint with the Court, plaintiff served this Complaint on the City of New York Commission on Human Rights and on the City of New York Corporation Counsel.

4.      Pursuant to § 215 of New York State Labor Law, prior to filing this complaint with the Court, plaintiff served this Complaint upon the Attorney General for the State of New York.

5.      Jurisdiction is proper under the FLSA, 29 U.S.C. § 217.  The Court has supplemental jurisdiction over the Labor Law, City Law and New York common law claims pursuant to 28 U.S.C. § 1367.

6.      As the unlawful employment practices complained of herein occurred within the Southern District of New York, venue is proper within the district pursuant to 28 U.S.C. §1391(b) and (c).

PARTIES

7.      Plaintiff worked at Jean Georges from February 2004 until he was constructively discharged in January 2006.

8.     Triomphe Restaurant Corporation is a New York corporation that does business as Jean Georges Restaurant and is an employer within the meaning of the FLSA, the Labor Law, and the City Law.

9.     Jean-Georges Management is a New York limited liability corporation that manages several restaurants owned and operated by Vongerichten around the world, including Jean Georges, including by providing human resources services.  Jean-Georges Management is an employer within the meaning of the FLSA, the Labor Law, and the City Law.

10.     Upon information and belief, Vongerichten is the Chief Executive Officer of Triomphe Restaurant Corporation and Jean-Georges Management.   Vongerichten is an employer within the meaning of the FLSA, the Labor Law, and the City Law.

## FACTUAL ALLEGATIONS

11.     Bassani is a gay man.

12.     Jean Georges is a fine-dining restaurant that was rated with four stars by the New York Times and three stars by Michelin, a prestigious restaurant guide.

13.     Bassani was hired by defendants on or about February 17, 2004 as a junior captain for lunch service and a waiter for dinner service at Jean Georges.

14.     In or about mid-September 2004, Bassani was promoted to senior captain.

15.     After Bassani bean working for defendants, Tony Di Salvo ("Di Salvo"), the Chef de Cuisine, began to make harassing comments to Bassani about his sexual orientation. For example, one day Di Salvo asked Bassani how his weekend was and "how many guys did you suck off?"

16.    On another occasion, in front of the Director of Service, Grace Ann Jordan ("Jordan"), Di Salvo commented about Bassani's upcoming day off by stating, "He's gonna suck dick all day."  Jordan laughed in response.  After that incident, Bassani reported the comment, and Jordan's response, to Anthony Rudolph ("Rudolph"), who was a Maitre d' at the time. Rudolph said he would speak to Di Salvo.

17.    On another occasion, on or about September 9, 2004, Bassani's father visited Jean Georges for lunch.  When Di Salvo learned that Bassani's father was present, he asked Bassani, "Does he know?"  Bassani asked what he meant.  Di Salvo asked if Bassani's father knew that Bassani was a "cocksucker."  Bassani then asked Rudolph if he had ever spoken to Di Salvo about his earlier comments.  Rudolph said he had not.  Bassani said that if the conduct did not stop he would go to Philippe Vongerichten, the General Manager of Jean Georges.  Rudolph decided to let Philippe Vongerichten handle the matter.  Di Salvo apologized to Bassani, but said that Bassani could have just told him to "fuck off."

18.    Soon after the incident of September 9, 2004, Bassani learned that Di Salvo was leaving Jean Georges in about a week.

19.    On or about September 18, 2004, after Jean Georges closed for the night, the managers held a going-away party for Di Salvo.  Dozens of employees were present, as well as much of the management.  At the beginning of the party, Rudolph announced that there would be entertainment.  A prostitute then entered the dining room and began to perform explicit sexual acts on herself and with employees.  At one point, the prostitute asked for a volunteer.  Di Salvo and John Iuzzini ("Iuzzini"), the Chef Patissier, pointed at Bassani.  Before Bassani realized what was happening, the prostitute, who was naked, charged at Bassani, pushed him onto the top of one of the dining room tables, straddled him, and began to gyrate her genitals within inches of his

face. Bassani shut his eyes and froze, waiting for the assault to end.  When it was over, he saw a group of employees physically restrain the new Chef de Cuisine on a banquette while the prostitute performed a sexual act with him.  Bassani left at that point, and, upon information and belief, the party continued.

20.    Rudolph told numerous employees that he and Iuzzini had hired and paid for the prostitute.

21.    About a week after the party with the prostitute, Rudolph told Bassani that he and Iuzzini had had a meeting about the prostitute with Christopher Malm, then the Human Resources Director for Jean-Georges Management.  The only consequences for Rudolph and Iuzzini was that they were told they would not be permitted to organize entertainment for any future company parties, and that Jean Georges would not have a holiday party separate from the joint holiday party held for the restaurants owned by Vongerichten.

22.    Several months after the party with the prostitute, defendants promoted Rudolph to Service Director, a senior manager position just below General Manager.

23.    After Di Salvo left, Bassani continued to be subjected to a hostile work environment.  Several employees frequently made offensive comments.  For example:

a.    On numerous occasions Iuzzini made offensive comments to Bassani, including calling him a derogatory Spanish slang word directed at homosexuals, saying that all gay men were "whores," and saying that Bassani's "asshole" must "look like a Krispy Creme doughnut."

b.    The senior sommelier was often abusive to Bassani and called him a "whore" in front of Rudolph, who did nothing about it.

c.       John Hiers ("Hiers"), a captain, frequently made offensive comments to Bassani.  For example, when another employee commented that Bassani had lost weight, Hiers said that Bassani was dying of AIDS.  On other occasions, Hiers said that what gay people did was "disgusting" and asked Bassani what "depraved" things he did.

d.       In the fall of 2005, one of the waiters called Bassani a "faggot."

24.     Bassani repeatedly complained to Rudolph about the discriminatory and harassing comments, including those described above.  Rudolph usually promised to talk to the perpetrator.  Bassani does not know if Rudolph ever did so.  The conduct continued.

25.     On or about November 17, 2005, Hiers walked up to Bassani and said, "When you told your father you were gay, could you see how disgusted he was?  Could you just see it in his face?"  The next day, Bassani complained to Rudolph, who said he would talk to Hiers.

26.     Soon after speaking to Rudolph, Bassani called Denis Bouron ("Bouron"), Service Director for Jean-Georges Management, and told him about the most recent comment by Hiers.  Bouron told Bassani to call Angela Schofield ("Schofield"), the new Human Resources Director of Jean-Georges Management.  Bassani called Schofield and reported Hiers' conduct to her.  He told her it was not the first time this had happened, but it would be the last.  They agreed to meet.

27.     Bassani met with Schofield, Philippe Vongerichten, and Rudolph in November 2005.  Bassani described his earlier complaints about Di Salvo and the pattern of conduct by Hiers.  They told Bassani that they had already met with Hiers, that someone else had

made a complaint about Hiers, and that Hiers had been warned before that if there was another complaint he would be fired. Bassani told them that he did not want to quit, but he could not take working in this type of environment. The meeting ended with Schofield, Philippe Vongerichten and Rudolph saying that they would discuss whether to fire Hiers. Soon thereafter, Bassani learned that Hiers was going to be suspended for one week.

28.    Around the time that Bassani complained to Schofield, Rudolph began to be abusive to Bassani, frequently yelling at him, and calling him into his office to berate him.

29.    One day soon after Hiers had been suspended, Iuzzini saw Bassani talking to Iuzzini's assistants. Iuzzini yelled at them that they had better be careful what they said or Bassani would "run and cry to Angela [Schofield]."

30.    On or about December 28, 2005, Rudolph called Bassani a "pussy" in front of a new waiter. Bassani was so upset he went outside for several minutes, and cried. Bassani then went to Rudolph's office and quit. Given the ongoing harassment, as well as management condoning and participating in the harassment, Bassani felt he had no choice. Rudolph responded to Bassani with a smile, which made Bassani upset. Rudolph said that he could have fired Bassani months ago. Bassani asked what he had done. Rudolph had no answer.

31.    On or about December 31, 2005, Bassani gave Philippe Vongerichten a resignation letter, with four weeks of notice.

32.    One evening in January 2006, Bassani asked the sommelier if he could get past him to get an order pad. Hiers shouted to the sommelier, "Don't fall for it. It's a set-up for a sexual harassment lawsuit." The sommelier told Bassani to ignore the comment because he was leaving.

33.     Also in January 2006, after Hiers learned that Bassani was taking a trip to Lake Tahoe, he warned Bassani that Lake Tahoe was "redneck" California, where they did not tolerate "queers."

34.     Bassani's last night at Jean Georges was January 28, 2006.  At the staff meeting that night, Rudolph announced that it was Bassani's last night and thanked him for "two years of [his] tightened sphincter."  Rudolph announced that they were going to play a game.  He pointed to a tray with three plates with covers.  Rudolph told Bassani to pick one, and Bassani did so.  On the plate there was a note saying the chef would cook something for Bassani at the end of his shift, a tradition for employees who are leaving.  Rudolph told Bassani to lift the other two covers.  Under one was a rubber vagina, and under the other a large banana.  At the end of the shift, when Bassani went to the chef for his meal, the chef told him to "fuck off."

35.     The next day, Bassani spoke to the Maitre d' who had not been on duty the prior night.  He told her what had happened.  She told Bassani that when Bassani turned in his resignation letter that Rudolph had said, "Well, Joe finally quit."

36.     On or about January 30, 2006, Bassani called Schofield.  He told her that the harassment he had complained about had not stopped and that, as a result, he had quit.  He also told her about his last night.  Schofield seemed uninterested.  Bassani said that one could expect such a situation from a restaurant at which a manager hires a hooker for the dining room and gets away with it.  Bassani was so upset that he cried.  Schofield said that she would talk to Rudolph and Hiers, and wished Bassani luck.  She did not ask him to reconsider his resignation.

37.     On or about February 1, 2006, Bassani met with Philippe Vongerichten. Bassani told him what had happened his last night at Jean Georges.  Philippe Vongerichten said

241826 v1

8

he was sorry about Bassani's problem with Rudolph and that when Bassani came back to New York and was ready, he would give Bassani a job with the company in management.

38.    Throughout Bassani's employment with defendants he was paid less than the full minimum wage. Throughout his employment, Bassani was required to put all of the tips he received into a tip pool. Throughout Bassani's employment, Maitre d's with management responsibilities and the Service Director took a percentage of the tip pool.

39.    Upon information and belief, other restaurants owned and operated by Vongerichten and managed by Jean-Georges Management have been sued by employees and/or investigated by the New York Department of Labor for unlawfully permitting management to share in the tip pools.

40.    In or about April 2006, after repeated efforts to reach Philippe Vongerichten by telephone, Bassani went to see him to discuss the management position Philippe Vongerichten had promised him. Philippe Vongerichten told Bassani that he had been too busy to return Bassani's calls. Philippe Vongerichten advised Bassani to send his resume to Schofield.

41.    In April 2006, Bassani dropped off his resume with another "four-star" restaurant. He immediately received a call, and the next day interviewed with the General Manager and Human Resources Director. The Human Resources Director used to work for defendants. The General Manager told Bassani he would call him in a few days. A few days later, the General Manager told Bassani they were not sure what they were doing.

42.    A few weeks later, Bassani repeatedly tried to speak to the Human Resources Director at the other four-star restaurant. Bassani was not able to speak to her until June 2006. He said that the interview had gone so well and asked what had changed. She said they had been given "information" about him. Bassani asked what sort of information. After

putting Bassani on hold, the Human Resources Director told Bassani that it was two months earlier, and she could not recall what was said. She told Bassani that when the Human Resources Department at Jean Georges did not return her calls, the General Manager from her restaurant had called Jean Georges and spoke to a "manager."

43.    Bassani then called Bouron at Jean-Georges Management. Bassani told him about the management job Philippe Vongerichten had promised him. Bouron said that Philippe Vongerichten did not hire management. Bassani also told Bouron about the bad reference. Bouron told Bassani to make an appointment with Schofield, but not to tell her what it was about. Bassani called Schofield and asked for an appointment. Schofield insisted on knowing the reason for the appointment. Bassani told her about the bad reference. Schofield responded that that was illegal. However, Schofield did not offer to take any action. Bassani then called Bouron again and told him about his conversation with Schofield. Bouron told Bassani not to go to Jean Georges and not to contact anyone there.

44.    In or about August 2006, Bassani went to see Philippe Vongerichten. Bassani told him about the bad reference. Philippe Vongerichten claimed to know nothing about it. Philippe Vongerichten also said that they never had a problem with Bassani and that defendants never gave bad references.

## FIRST CAUSE OF ACTION

45.    Plaintiff repeats and realleges paragraphs 1 through 44 as if fully set forth herein.

46.    By the acts and practices described above, defendants intentionally refused to pay plaintiff minimum wage and improperly took a portion of his tips, in violation of the FLSA.

241826 v1

47.   Plaintiff has suffered lost wages as a result of defendants' willful and unlawful conduct.

## SECOND CAUSE OF ACTION

48.   Plaintiff repeats and realleges paragraphs 1 through 47 as if fully set forth herein.

49.   By the acts and practices described above, defendants' supervisory employees controlled a mandatory tip pool and allocated a portion of such tips to members of management, in violation of New York State Labor Law § 196-d.

50.   Defendants willfully violated the New York State Labor Law and/or showed reckless disregard for plaintiff's statutorily protected rights.

51.   Plaintiff suffered lost wages as a result of defendants' unlawful conduct.

## THIRD CAUSE OF ACTION

52.   Plaintiffs repeat and realleges paragraphs 1 through 51 as if fully set forth herein.

53.   By the acts and practices described above, defendants have discriminated against plaintiff in the terms and conditions of his employment on the basis of his sex and sexual orientation in violation of the City Law.

54.   Defendants knew that their actions constituted unlawful discrimination on the basis of sex and sexual orientation and/or showed reckless disregard for plaintiff's statutorily protected rights.

55.     Plaintiff is now suffering irreparable injury and monetary damages as a result of defendants' discriminatory conduct, and will continue to do so unless and until the Court grants relief.

FOURTH CAUSE OF ACTION

56.     Plaintiffs repeat and realleges paragraphs 1 through 55 as if fully set forth herein.

57.     By the acts and practices described above, defendants have retaliated against plaintiff for his opposition to unlawful employment practices in violation of the City Law.

58.     Defendants knew that their actions constituted unlawful retaliation and/or showed reckless disregard for plaintiff's statutorily protected rights.

59.     Plaintiff is now suffering irreparable injury and monetary damages as a result of defendants' discriminatory conduct, and will continue to do so unless and until the Court grants relief.

FIFTH CAUSE OF ACTION

60.     Plaintiffs repeat and realleges paragraphs 1 through 59 as if fully set forth herein.

61.     Defendants intentionally and tortiously interfered with plaintiff's prospective business relations, by providing false information to a prospective employer, whereby plaintiff has suffered and will continue to suffer damages unless and until the Court grants relief.

WHEREFORE, plaintiff respectfully request that this Court enter judgment:

(a)     declaring that the acts and practices herein violate the FLSA, the Labor Law, the City Law, and New York common law;

(b)     enjoining and permanently restraining these violations of the FLSA, the Labor Law, the City Law, and New York common law;

(c)     directing defendants to take such affirmative steps as are necessary to ensure that the effects of these unlawful practices are eliminated and do not continue to affect plaintiff's employment opportunities;

(d)     directing defendants to reinstate plaintiff to the position he would have occupied but for defendants' discriminatory and unlawful conduct and making him whole for all the earnings and other benefits he would have received but for defendants' discriminatory treatment, including but not limited to lost wages and other lost benefits;

(e)     directing defendants to pay plaintiff lost wages as a result of defendants' failure to pay minimum wage and for its tip appropriation violations;

(f)     directing defendants to pay plaintiff an additional amount as liquidated damages for their failure to pay minimum wages, as provided by the FLSA, and for its tip appropriation violations, as provided by the FLSA and the Labor Law;

(g)     directing defendants to pay plaintiff compensatory damages, including damages for emotional distress, humiliation, and pain and suffering, pursuant to the City Law and New York common law;

(h)     directing defendants to pay an additional amount as punitive damages pursuant to the City Law and New York common law;

(i)     awarding plaintiff such interest as is allowed by law and compensation to adjust for any adverse tax consequences of the award;

(j)    awarding plaintiff his reasonable attorneys' fees and costs pursuant to the FLSA, the Labor Law, and the City Law;

(k)    granting such other and further relief as this Court deems necessary and proper.

### DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff demands a trial by jury in this action.


Dated: New York, New York
       January 11, 2007


                                 VLADECK, WALDMAN, ELIAS &
                                 ENGELHARD, P.C.


                      By:   _____
                                 Anne L. Clark (AC 6456)
                                 Attorneys for Plaintiff
                                 1501 Broadway, Suite 800
                                 New York, New York  10036
                                 (212) 403-7300